1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MARCUS D. WHITE,          )    1:07-CV-0558 OWW JMD HC
                      )
           Petitioner,   )
                      )    **FINDINGS AND RECOMMENDATION**
    v.                 )    **REGARDING PETITION FOR WRIT OF**
                      )    **HABEAS CORPUS**
                      )
DERRAL G. ADAMS,       )
                      )
           Respondent.   )
_____)

     Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

     Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Stanislaus County Superior Court.  A jury convicted him of voluntary manslaughter and found that he used a firearm in the commission of the offense.  After finding that Petitioner had sustained a prior serious felony conviction, the trial court sentenced him to twenty-one years in state prison.  (Answer at 1-2.)

     Petitioner filed an appeal in the California Court of Appeal.  The court affirmed the judgment in a reasoned opinion.  (Answer at 2; Lodged Docs. 1-4.)

     Petitioner filed a petition for review in the California Supreme Court.  The court summarily denied review.  (Answer at 2; Lodged Docs. 5-6.)

1   On April 11, 2007, Petitioner filed the instant petition in this Court.  The sole ground

2   presented is that Petitioner's right to a fair trial and due process rights were violated when the trial

3   court admitted testimonial evidence of an unsubstantiated prior act of violence.

4   On September 4, 2007, Respondent filed an answer to the petition.

5   On November 26, 2007, Petitioner filed a traverse to the answer.

6                                **FACTUAL BACKGROUND**[1]

7   The victims, brothers John Wallace and Greg Wallace, had two other siblings, brother Yourry

8   and sister Gretta.  Gretta and Petitioner had a child together.

9   Yourry Wallace had a child with Jennifer Turner.  Yourry and Jennifer lived together until

10  August 2002 when Jennifer asked Yourry to leave.  Thereafter, John Wallace treated Jennifer's home

11  as his own.  Even though Jennifer and John were not involved in a personal relationship, John was

12  possessive and did not want Jennifer to have any boyfriends.

13  At the time of the shooting, Jennifer was pregnant with Petitioner's child.  However,

14  Petitioner was living with Marina Rocha.  When Gretta learned that Petitioner was dating Jennifer,

15  Gretta threatened to slap her.  When Marina was pregnant, Gretta threatened to beat her up and kick

16  the baby out of her stomach.

17  John and Greg were also prone to making threats.  A couple of weeks before they died, John

18  and Greg went to Jennifer's apartment where John proceeded to beat up Jennifer's brother.  When

19  Jennifer told John he could not come over to her house like that, John replied "Bitch, I'll come over

20  here if I want to.  I'll fucking kill you if I want to."

21  Greg repeatedly threatened Mike Rocha.  Mike was Marina's brother and Petitioner's good

22  friend.  Greg believed that Mike had "snitched on him," causing Greg to be sent back to the

23  California Youth Authority several years before.

24  After Petitioner broke up a fight between Greg and Mike, both John and Greg made threats

25  against Petitioner.  Greg told Petitioner that he was going after Mike and if Petitioner got in the way,

26  he would kill Petitioner as well.

27

28

---

[1]  The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of January 30, 2006 and are presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1); Lodged Doc. 4.

On December 13, 2002, Gretta, John, and Greg were drinking together.  Sometime after midnight on December 14, the three arrived at Jennifer's apartment.  The Wallaces banged on Jennifer's door and, when Jennifer opened it a crack, they pushed their way into the apartment.  Mike and Petitioner were also inside.

Greg immediately attacked Mike, punching him in the face and upper torso.  Mike was able to get away and ran outside.  Petitioner, John, and Gretta followed.  Shortly thereafter, Greg joined John and Gretta and went after Mike again.  Gretta described Greg as "going crazy."  He was violent and aggressive.

After more scuffling, Petitioner pointed a gun at Greg.  Greg slapped the gun away.  Petitioner then stepped back and shot Greg in the head.  Gretta and John started running to Gretta's car.  Gretta heard five shots and when she looked back, John was lying on the ground.

Both Greg and John died from gunshot wounds.  John was shot in the back.

Petitioner was charged with the murders of Greg Wallace (count 1) and John Wallace (count 2).  The information further alleged that: the murders constituted the special circumstance of multiple murders; in the commission of the murders Petitioner personally used a firearm; and Petitioner discharged a firearm resulting in great bodily injury or death.

In defending against the charges, Petitioner introduced evidence that the victims had a history of violence.  Accordingly, the prosecution was permitted to present evidence on rebuttal to prove that Petitioner had a violent character.

Two prosecution rebuttal witnesses testified without objection.  One described the robbery Petitioner committed in 1995 and another testified that Petitioner beat a man with both fists in 1996.  However, Petitioner objected to a third witness, Cecelia Jones, on the ground that her testimony was cumulative and that its probative value was outweighed by its prejudicial effect.

The trial court held a section 402 hearing to determine whether Jones's testimony was admissible as evidence of Petitioner's violent character.  Jones testified that her neighbor, Mardell Young, introduced Jones to Petitioner on December 13, 2002, the day before the shooting.  Later that day, Jones saw Petitioner hit Young five or six times around her head.  Jones went home and called 911 but the police did not respond to the scene.  A week later, Jones called the drug hotline to get

1  help for Young.  Thereafter, Jones was contacted by someone from the district attorney's office and

2  she spoke to a detective about the incident.

3       When questioned by defense counsel, Jones admitted that she had been in the courtroom for

4  part of the trial that morning.  She was not told that witnesses were excluded.

5       The prosecutor acknowledged that he did not have the 911 tape of Jones's call and told the

6  court he doubted that it existed "at this late date."  The prosecutor also advised the court that Mardell

7  Young denied that this incident occurred and insisted that she did not know Petitioner.

8       Defense counsel argued this evidence was not credible.  Counsel noted that the timing was

9  suspect and there was no evidence of the claimed 911 call.  Defense counsel further asserted that

10  evidence of Petitioner having beaten up a woman was "the most prejudicial kind of testimony."

11       The trial court determined that the witness was credible and that the evidence was relevant.

12  Nevertheless, the court ruled that it would not allow Jones's testimony unless the alleged victim,

13  Mardell Young, also testified.

14       When Mardell Young was produced, Jones testified before the jury.  Jones stated that at

15  around 4:00 p.m. on December 13, Young introduced her to Petitioner.  Later that evening, at

16  approximately 6:00 p.m., Young's mother called Jones and asked her to come over because Petitioner

17  was beating up Young.  Jones then went back to her house and called the police.  However, the

18  police did not respond to the scene.  Thereafter, Young testified that she did not know Petitioner and

19  that the alleged battery did not occur.

20       The jury found Petitioner not guilty in count 1, and guilty of the lesser included offense of

21  voluntary manslaughter in count 2.  The jury also found that Petitioner personally used a firearm in

22  the commission of the voluntary manslaughter.

**DISCUSSION**

23

24  **I.  Jurisdiction**

25       Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

26  to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

27  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

28  375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

1   Constitution.  In addition, the conviction challenged arises out of the Stanislaus County Superior

2   Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. §

3   2241(d).  Accordingly, the Court has jurisdiction over the action.

4          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

5   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

6   Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997),

7   *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997),

8   *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only

9   applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment

10  of the AEDPA; thus, it is governed by its provisions.

11  **II.  Legal Standard of Review**

12         This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

13  pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

14  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

15         The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

16  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

17  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of

18  the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

19  clearly established Federal law, as determined by the Supreme Court of the United States" or

20  "resulted in a decision that was based on an unreasonable determination of the facts in light of the

21  evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at

22  70-71; see Williams, 529 U.S. at 413.

23         As a threshold matter, this Court must "first decide what constitutes 'clearly established

24  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at 71,

25  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

26  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

27  of the relevant state-court decision."  Id., *quoting* Williams, 592 U.S. at 412.  "In other words,

28  'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set

1  forth by the Supreme Court at the time the state court renders its decision." Id.

2       Finally, this Court must consider whether the state court's decision was "contrary to, or

3  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

4  *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

5  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

6  question of law or if the state court decides a case differently than [the] Court has on a set of

7  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

8  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

9  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

10  that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

11       "[A] federal court may not issue the writ simply because the court concludes in its

12  independent judgment that the relevant state court decision applied clearly established federal law

13  erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

14  federal habeas court making the "unreasonable application" inquiry should ask whether the state

15  court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

16       Petitioner has the burden of establishing that the decision of the state court is contrary to or

17  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

18  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

19  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

20  decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.

21  1999).

22       AEDPA requires that we give considerable deference to state court decisions.  The state

23  court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

24  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,

25  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

26  **III.  Review of Petitioner's Claim**

27       Petitioner argues that his right to a fair trial and due process rights were violated when the

28  trial court admitted testimonial evidence of an unsubstantiated prior act of violence.  Petitioner

1   claims that the trial court should have excluded the testimony of Cecelia Jones, as it was cumulative

2   and its probative value was outweighed by its prejudicial effect.

3          This claim was presented in an appeal to the California Court of Appeal, which affirmed the

4   judgment in a reasoned opinion.  (Lodged Docs. 1-4.)  The issue was then raised in a petition for

5   review to the California Supreme Court, which summarily denied review.  (Lodged Docs. 5-6.)  The

6   California Supreme Court, by its "silent order" denying review, is presumed to have denied the

7   claims presented for the same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker,

8   501 U.S. 797, 803 (1991).

9          In rejecting Petitioner's claim, the Court of Appeal found that the trial court did not abuse its

10  discretion in allowing Ms. Jones's testimony, as it was relevant to the issue of Petitioner's character

11  and it was not inflammatory or cumulative.  (Lodged Doc. 4 at 6-7.)

12         "State prisoners are entitled to habeas relief under 28 U.S.C. § 2254 only if their detention

13  violates the Constitution or a federal statute or treaty.  A state court's procedural or evidentiary ruling

14  is not subject to federal habeas review unless the ruling violates federal law, either by infringing

15  upon a specific federal constitutional or statutory provision or by depriving the defendant of the

16  fundamentally fair trial guaranteed by due process."  Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir.

17  1995) (citations omitted); see also Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000) ( "[A]

18  violation of state law standing alone is not cognizable in federal court on habeas.").

19         The state court's determination that Petitioner's rights were not violated by the introduction

20  of Ms. Jones's testimony was not unreasonable.  Ms. Jones's statements were relevant to Petitioner's

21  character, and not unfairly prejudicial or cumulative, as they described Petitioner committing an act

22  of violence shortly before the shooting, unlike the similar prior incidents which occurred six and

23  seven years earlier.  The fact that there was not any significant evidence corroborating Ms. Jones's

24  testimony did not mandate exclusion, as the credibility of witnesses must be decided by the jury.

25  Vorse v. Sarasy, 53 Cal.App.4th 998, 1009 (1997) ("It is axiomatic that questions of credibility are

26  exclusively within the province of the jury.").  Further, the trial court only allowed Ms. Jones to

27  testify after ensuring the jury would also hear from Mardell Young, the alleged victim in the prior

28  incident, who claimed the incident never took place.  Petitioner has not shown that he was denied a

1  fundamentally fair trial or that the trial court's ruling infringed upon any other specific constitutional

2  guarantee.  See Alberni v. McDaniel, 458 F.3d 860, 863-867 (9th Cir. 2006) (recognizing that the

3  Supreme Court has reserved the question of whether a trial court's admission of propensity evidence

4  may violate the Due Process Clause).

5  **RECOMMENDATION**

6  Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

7  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

8  Respondent.

9  This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

10  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

11  of the Local Rules of Practice for the United States District Court, Eastern District of California.

12  Within thirty (30) days after being served with a copy, any party may file written objections with the

13  court and serve a copy on all parties.  Such a document should be captioned "Objections to

14  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

15  filed within ten (10) court days (plus three days if served by mail) after service of the objections.

16  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

17  parties are advised that failure to file objections within the specified time may waive the right to

18  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19

20  IT IS SO ORDERED.

21  **Dated:      October 23, 2008                    /s/ John M. Dixon**
   **                                         UNITED STATES MAGISTRATE JUDGE**

22

23

24

25

26

27

28